IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LINDA DUNNAGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No.  14-1339-SMY/SCW |
| ) | |
| KURT PRENZLER, INDIVIDUALLY ) | |
| AND IN HIS OFFICIAL CAPACITY AS ) | **PLAINTIFF DEMANDS** |
| MADISON COUNTY TREASURER, and ) | **TRIAL BY JURY** |
| MADISON COUNTY, ILLINOIS, an ) | |
| Illinois Municipality, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

*Americans With Disabilities Act*
*Disparate Impact, Failure to Accommodate, and Retaliation*

COMES NOW Plaintiff, LINDA DUNNAGAN, by and through her undersigned attorneys, and for her Complaint against defendants, KURT PRENZLER, individually and in his capacity as Madison County Treasurer, and MADISON COUNTY, ILLINOIS, an Illinois Municipality, states:

1.  This action is brought pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et seq.

2.  Jurisdiction and *venue* are proper in this Court pursuant to this Court's Federal Question Jurisdiction, 28 USC § 1331, as this matter is brought pursuant to the federal law known as the ADA and the discriminatory/retaliatory acts alleged herein occurred in this judicial district; explaining further plaintiff states as follows :

    a.  Plaintiff filed a timely charge of disability discrimination and retaliation with the EEOC on or about October 30, 2013 – EEOC charge number 560-2014-00152.

1

      b.      Plaintiff received a Notice of Right to Sue on September 26, 2014 from the U.S. Department of Justice, Civil Rights Division; plaintiff files suit within the 90 day window provided by law for bringing suit in federal court.

      c.      The unlawful employment practices and the illegal discrimination and retaliation alleged herein occurred in Madison County, Illinois, which is an Illinois county in the judicial circuit which comprises the Southern District of Illinois.

3. Plaintiff became employed by the Madison County Treasurer's Office in 2000; plaintiff was promoted to and began work as Madison County Comptroller in 2002.

4. At all relevant times from the date defendant hired plaintiff to the date defendant fired plaintiff, plaintiff successfully performed the essential functions of her job and met and exceeded defendants' reasonable job expectations.

5. In approximately June 2012 plaintiff was hospitalized with a life-threatening illness.

6. While plaintiff was ill in June and July 2012 she experienced difficulty with major life activities including eating, sleeping, walking, working, and caring for herself; plaintiff was disabled as that term is used in the ADA; plaintiff had disabling impairments, had a history of impairment, and was considered at relevant times by defendants to be disabled and suffering from significant impairments in many areas of major life activities.

7. Despite plaintiff's grave and life threatening illness, neither the Madison County Treasurer nor Deputy Treasurer contacted plaintiff nor expressed a scintilla of concern for her physical or emotional well-being; the Treasurer's indifference towards plaintiff and the defendants' response to plaintiff's hospitalization and life threatening

illness is indicia of defendants' ongoing hostility and animus towards plaintiff on account of her disability, perceived disability, and history of impairment(s).

8. In approximately August 2012, plaintiff, while improved but still ill and recovering from her life threatening illness, returned to work; plaintiff on her return to work was told her job duties were being transferred to a non-disabled, less experienced employee; plaintiff was told she was required to train that employee.

9. In approximately August 2012 plaintiff was able to perform her work for defendant; while at work plaintiff self-administered an intravenous drip pursuant to her physician's instructions.

10. While performing work for defendants County of Madison and the Madison County Treasurer's Office, plaintiff continued to perform her job duties for defendant with skill and great competence; plaintiff despite recovering from her life threatening illness and receiving a self-administered intravenous drip at work was able to fully perform all her essential job functions to defendants' reasonable satisfaction.

11. Madison County Treasurer Prenzler personally observed plaintiff at work at her desk in the Treasurer's Office with an intravenous drip hooked to her arm. Defendant Prenzler, instead of being impressed with plaintiff Dunnagan's loyalty, dedication, and professionalism, and being supportive of plaintiff Dunnagan, became visibly agitated; defendant Prenzler audibly challenged plaintiff receiving medical treatment while at work.

12. Defendant Prenzler had no legitimate business reason to challenge or object to plaintiff performing her job duties while still receiving essential and life sustaining medical treatment.

13. Plaintiff was able to fully perform the essential functions of her job with defendant if provided the reasonable accommodation of an IV drip at work. Receiving medical treatment at work that did not interfere with plaintiff's job duties, did not interfere with the smooth running of the office, and which permitted plaintiff to work was and is a reasonable accommodation which defendants were required, consistent with the ADA, to permit plaintiff to receive.

14. After her return to work in August 2012, Plaintiff was briefly rehospitalized and readmitted to the hospital in early November 2012; plaintiff returned to work by mid-November 2012.  During the November period of rehospitalization plaintiff was again unable to perform significant major life activities; including but not limited to caring for herself, moving about, and working.

15. After plaintiff returned to work in mid-November, 2012, defendant Prenzler called a meeting with plaintiff; at the meeting defendant Prenzler suggested that plaintiff retire from her employment with defendants and seek disability benefits. Prenzler's comments, made shortly after he observed plaintiff receiving an IV drip at work, link his intent to end plaintiff's employment with defendants to plaintiff's disability, perceived disability, and/or history of impairment.

16. At the November 2012 meeting plaintiff refused defendant Prenzler's suggestion that she seek disability benefits and indicated a desire to remain fully employed in the position she was successfully performing.

17. In December 2012 and following defendant Prenzler's suggestion that plaintiff seek disability benefits, plaintiff spoke to the Madison County Deputy Treasurer and stated she believed defendant Prenzler was attempting to fire plaintiff or force plaintiff from her job. The Deputy Treasurer stated words to the effect of "*you have been*

*gone a lot.*" Plaintiff responded to this comment stating words to the effect of *"if a person had cancer you can't let them go for that, this is the same as that.*" In making this statement and other similar statements, plaintiff was asserting her right under the ADA to be free from illegal discrimination and illegal retaliation based on her disability or perceived disability or history of impairment. Plaintiff made said statements in opposition to defendants' efforts to terminate plaintiff's employment.

  18. Plaintiff continued to work through December 2012; during this time she successfully performed the essential functions of her job and consistently met or exceeded defendants' reasonable job expectations.

  19. During late 2012 and early 2013 plaintiff Dunnagan continued to resist and oppose defendants' illegal discrimination and violations of the ADA.

  20. On or about January 3, 2013 plaintiff received a letter from defendant Prenzler stating: "*We have decided to eliminate the Comptroller position within the next 30 days.*"

  21. Defendants terminated plaintiff's employment on or about February 14, 2013.

  22. Defendants' purported elimination of the Comptroller position was pretextual, discriminatory and retaliatory; Madison County must have an individual perform the duties of Comptroller and the Treasurer's Office cannot function without an individual performing the duties of Comptroller and the duties previously successfully performed by plaintiff. The real reason defendants eliminated the Comptroller position was to attempt to create a legal justification for the illegal and unlawful termination of plaintiff's employment.

23. Defendant Prenzler attempted to justify the termination of plaintiff's employment by claiming a cost saving; no such cost saving exists or has been realized. The claim that the Treasurer's Office saved money by eliminating the Comptroller position and terminating plaintiff's employment is a pretextual, false, and fake reason used to justify the illegal and unlawful termination of plaintiff's employment.

24. Madison County employs the individual previously trained by plaintiff to do the work of a Comptroller; this individual is not disabled and has significantly less experience than plaintiff.

25. Defendants never at any time during 2012 or 2013 told plaintiff she was failing to meet defendants' job expectations or told plaintiff she was unable to perform the essential functions of her job.

26. Defendants never initiated or participated in any give and take discussions as to how defendants, consistent with the requirements of the ADA, might reasonably accommodate plaintiff's disability/impairments.

27. Because plaintiff at all relevant times performed her job consistent with defendants' reasonable job expectations without any accommodations, the defendants knew plaintiff could perform her job with reasonable accommodations. If defendants had any concern regarding plaintiff's ability to perform her job, defendants were required by the ADA to engage in an interactive, give and take process of finding reasonable accommodations; defendants never made any such efforts.

28. Defendants discriminated against plaintiff on account of her disability, perceived disability, history of impairment, and defendants terminated plaintiff's employment in violation of the Americans with Disabilities Act.

29. Defendants unlawfully retaliated against plaintiff on account of her efforts to resist and oppose defendants' violation(s) of the Americans with Disabilities Act.

30. Plaintiff has suffered loss of income and benefits, including but not limited to loss of increased IMRF pension benefits she would have received had she retired at a later date, and has experienced emotional distress and humiliation caused by defendants' discrimination, retaliation, and termination of her employment.

31. Plaintiff has incurred attorneys' fees, costs, and expenses in bringing this claim, and plaintiff is entitled to recover her attorneys' fees, costs, and expenses pursuant to the ADA.

32. Plaintiff seeks injunctive and compensatory relief as the Court deems right and just. Plaintiff seeks an order from this Court enjoining the Defendants from further or additional violations of the ADA.

33. Defendants are employers as that term is used in the ADA and defendants are required by the ADA to comply with the statutory requirements of the ADA.

WHEREFORE Plaintiff respectfully requests this Court find for her and against Defendants, award plaintiff compensatory damages for her loss of income and benefits and emotional distress, attorneys' fees, and any other legal and equitable (including but not limited to injunctive) relief this Court deems just, fair, and proper.

        LINDA DUNNAGAN

By:    */s/ Lee W. Barron*
Lee W. Barron (IL 06195132)
William D. Buchanan (IL 6312437)
112 Front Street
Alton, IL 62002
Phone: 618-462-9160
Fax: 618-462-9167
lee@leebarronlaw.com
will@leebarronlaw.com

ATTORNEYS FOR PLAINTIFF